IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA - ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>EROL CHERENFANT and DANIELA JEANNOT CHERENFANT,<br><br>Debtors. | CASE NO. 16-51587-jrs<br><br>CHAPTER:  13<br><br>JUDGE:  HONORABLE JAMES R. SACCA |
| DITECH FINANCIAL LLC,<br><br>Movant,<br>v.<br><br>EROL CHERENFANT and DANIELA JEANNOT CHERENFANT, Debtors<br>NANCY J. WHALEY, Trustee,<br><br>Respondents. | CONTESTED MATTER |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion to Approve Loan Modification and related papers with the Court seeking an Order Approving a Loan Modification.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1404, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at - 10:45 A.M., on March 6, 2018.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk,

U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

> */s/ Radha Gordon*
> Radha Gordon, Bar No.: 347192
> Attorney for Movant
> Aldridge Pite, LLP
> Fifteen Piedmont Center
> 3575 Piedmont Road, N.E., Suite 500
> Atlanta, GA 30305
> Phone: (404) 994-7400
> Fax: (888) 873-6147
> Email: RGordon@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA - ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 16-51587-jrs |
| EROL CHERENFANT and<br>DANIELA JEANNOT CHERENFANT, | CHAPTER: 13 |
| Debtors. | JUDGE: HONORABLE JAMES R. SACCA |
| DITECH FINANCIAL LLC, | CONTESTED MATTER |
| Movant, | |
| v. | |
| EROL CHERENFANT and<br>DANIELA JEANNOT CHERENFANT,<br>Debtors,<br>NANCY J. WHALEY, Trustee, | |
| Respondents. | |

## MOTION TO APPROVE LOAN MODIFICATION

COMES NOW Movant named above and shows this Court the following:

1. This is a Motion to approve a loan modification retroactively.

2. Movant is the holder of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 631 Rangeley Meadow, Hampton, Georgia 30228.

3. On or around January 16, 2018, the parties agreed to modify the loan in accordance with the Loan Modification Agreement, attached hereto as Exhibit A. Effective January 1, 2018, the new principal balance is $188,436.89 with $30,436.89 in principal being deferred, the interest rate remains 3.000% fixed, the term is 480 months, and the new principal and interest payment was $702.85 and is now $565.62. The initial payment amount was lowered from $968.17 to $939.85, beginning February 1, 2018. Reference is made to the attached

Agreement for the remaining provisions of the Agreement.

4.  Movant believes that it is the parties' best interest to ratify the loan modification and seek approval retroactively.

WHEREFORE, Movant prays that its Motion be granted, and that it have such other and further relief as is just and equitable.

*/s/ Radha Gordon*
Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: RGordon@aldridgepite.com

When Recorded. Return to:
Ditech Financial LLC
2100 East Elliot Road. Building 94 T214
Tempe. AZ 85284

This document was prepared by Ditech Financial LLC

[Space above This Line for Recording Data]

Customer(s)[1]: EROL CHERENFANT and DANIELA CHERENFANT
Lender/Servicer ("Lender"): Ditech Financial LLC F/K/A Green Tree Servicing LLC
Date of first lien mortgage, deed of trust. or security deed ("Mortgage") and Note ("Note"): 12/12/2006
. Recorded 12/29/2006 in Book 8949 and Page 591. Instrument No. 0669190S
New Modified Amt: $188,436.89; Unpaid Principal Balance: $126,525.23; New Money: $61,911.66
Property Address ("Property"): 631 RANGELEY MEADOW. HAMPTON. GA 30228

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"). made this 16 day of Jan, 2018. between the Lender and Customer. amends and supplements 1) the Mortgage. Deed of Trust. or Security Deed (the "Security Instrument"). and Timely Payment Rewards Rider. if any. dated 12/12/2006 and recorded in Book or Liber 8949. at page(s) 591. and/or Document #0669190S of the  Clerk of Superior Court        Records of  Clayton County
                                (Name of Records)              (County and State. or other Jurisdiction)

and (2) the Note. bearing the same date as. and secured by. the Security Instrument. which covers the real and personal property described in the Security Instrument and defined therein as the "Property". located at
631 RANGELEY MEADOW. HAMPTON. GA 30228
(Property Address)

the real property described in the above-referenced Security Instrument.

In consideration of the mutual promises and agreements exchanged. the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 01/01/2018. the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $188,436.89 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and other amounts capitalized.

2. $30,436.89 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Customer will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $158,000.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.000%. from 01/01/2018. Customer promises to make monthly payments of principal and interest of U.S. $565.62, beginning on the 02/01/2018. and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate



ABK
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                              Form

Account Modification
## TRANSPARENCY NOTICE

This Account Modification Summary is intended to be a clear and simple summary of the final account modification that we are pleased to offer your client. We believe the account modification will help put your client in a better position to make their account payments. When your client signs and returns the enclosed account modification agreement, they are agreeing to a new and permanent account modification. Please thoroughly review all of the enclosed documents to ensure that your client understands the details of their account modification agreement.

### Summary of Your Client's Modified Account:

Your client's new balance is $188,436.89. To calculate this new account balance, we added past due interest in the amount of $4,036.01 and eligible servicing expenses of $5,385.93 and taxes and insurance of $2,246.26 totaling $11,668.20 to your client's principal balance. Unpaid late fees are not included in this amount and will be waived when your client's account modification is finalized. If your client's account has mortgage insurance, the mortgage insurance premium may increase as a result of the higher mortgage loan balance.

The current interest rate of 3.000% is staying at 3.000% for the life of your client's modified account.

Your client's final payment date, which is their new maturity date, is January 1, 2058.

We have also deferred the repayment of $30,436.89 in principal (deferred principal) to the end of your client's account term. Deferred principal does not accrue interest. The deferred principal amount must be paid in full when your client pays off the account, transfer an interest in, refinance, or sell their home or at maturity.

### Your New Mortgage Payments:

Your client's new total modified monthly mortgage payments of $939.85 are made up of principal and interest of $565.62 and an initial escrow amount of $374.23. Escrow payments are collected for payment of items such as property taxes and insurance and may change. We will notify your client of any adjustments to the total monthly payment.

Your client's total monthly payments will be due on the 1st of the month starting the 1st of February, 2018.

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 3.000% | 01/01/2018 | $565.62 | $374.23, may adjust periodically | $939.85, may adjust periodically | 02/01/2018 | 480 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

If your client has questions regarding the modification agreement or the steps they must take to complete this process, please call the assigned account representative BRADLEY L at 1-800-643-0202, extension 50091 Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p/m. CST.



ABK



Mod Transparency Notice

of 3.000% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. The new Maturity Date will be 01/01/2058. Customer's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 3.000% | 01/01/2018 | $565.62 | $374.23, may adjust periodically | $939.85, may adjust periodically | 02/01/2018 | 480 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

3. Customer agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Customer sells or transfers an interest in the Property, (ii) the date Customer pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Customer makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

Customer understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

ABK
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument    Form

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer acknowledges that Lender may be required to report to the Internal Revenue Service any debt forgiveness of $600 or more in principal, subject to certain exceptions that may or may not apply to Customer. If required, such reporting may result in consequences regarding Customer's federal, state or local tax liability. In addition, if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Ditech cannot provide any advice or guidance regarding possible tax consequences or effect on any public assistance benefits. Customer may wish to consult with a tax professional about any possible tax consequences and/or Customer's public assistance office regarding other consequences that may result from the forgiveness of debt.

(f) Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g) Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

6. By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due

for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

7. Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and



LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument      ABK      Form

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

8. Customer understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.

Tempe, AZ 85284

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information: PO Box 6176, Rapid City, SD 57709-6176.

Sincerely,

Ditech
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p.m. CST

GSE Mod Cover Letter

ABK

In Witness Whereof, the Lender and I have executed this Agreement.

Ditech Financial LLC F/K/A Green Tree Servicing LLC
Lender

By: _____
Anita L. Garvin
Director, Default Services
License #: 1082252

Date

_Erol Cherenfant_ (signature)
EROL CHERENFANT

1-16-2018
Date

_signature_
DANIELA CHERENFANT

1-16-2018
Date

[Space Below This Line For Acknowledgments]

ABK
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                    Form

Signed, Sealed and Delivered in the Presence of:

01-16-2018                                          1/16/2018

_Chancelia Jozeph_                                  _[signature]_

Unofficial Witness                                  Unofficial Witness

## Acknowledgment

STATE OF: GEORGIA

COUNTY OF __Clayton__ ss.

I, __Althea C. Johnson__, a __Notary Public__, residing in the county and state named above, certify that

### EROL CHERENFANT and DANIELA CHERENFANT

who is personally [not] known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she/they signed, sealed and delivered the foregoing instrument of his/her/their own free will and accord, for the purposes named and expressed in said instrument.

In Witness Whereof, I have hereunto set my hand and official seal, this __16__ day of __January__, 20__18__.

ALTHEA C. JOHNSON
NOTARY PUBLIC-GEORGIA
CLAYTON COUNTY
MY COMMISSION EXPIRES
JULY 06, 2018

_Althea C. Johnson_
Signature

_Notary Public_
Title of Officer

My commission expires: 07/06/2018

EXHIBIT A

All that tract or parcel of land lying and being in Land Lot 18 of the 5th District, Clayton County, Georgia, being Lot 105, Block D of Hampton Estates, Unit I, as per plat recorded in Plat Book 33, Pages 152-156, Clayton County, Georgia Records, to which plat reference is made for a more detailed description.

PARCEL ID NUMBER: 05018C B001

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA - ATLANTA DIVISION

| | |
|---|---|
| IN RE: | Case No. 16-51587-JRS |
| EROL CHERENFANT and<br>DANIELA JEANNOT CHERENFANT, | Chapter 13 |
| Debtors. | |

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on February 6, 2018, I served a copy of **Notice of Hearing and Motion to Approve Loan Modification** which was filed in this bankruptcy matter on February 6, 2018, in the manner indicated:

**The following parties have been served via e-mail**:

E. L. Clark
ecfnotices@cw13.com

Nancy J. Whaley
ecf@njwtrustee.com

**The following parties have been served via U.S. First Class Mail**:

Erol Cherenfant
631 Rangeley Meadows Court
Hampton, GA 30228

Daniela Jeannot Cherenfant
631 Rangeley Meadows Court
Hampton, GA 30228

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: February 6, 2018

/s/ *Radha Gordon*
Radha Gordon, Bar No.: 347192
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: RGordon@aldridgepite.com

```
Label Matrix for local noticing         Afni                                    American InfoSource LP as agent for
113E-1                                  1310 Martin Luther King Dr              DIRECTV, LLC
Case 16-51587-jrs                       Bloomington, IL 61701-1465              PO Box 5008
Northern District of Georgia                                                    Carol Stream, IL  60197-5008
Atlanta
Mon Feb  5 16:32:25 EST 2018

Avante                                  Carl Studd                              Daniela Jeannot Cherenfant
3600 South Gessner                      10159 Tara Blvd                         631 Rangeley Meadows Court
Houston, TX 77063-5357                  Suite E                                 Hampton, GA 30228-6176
                                        Jonesboro GA 30236-6502


Erol Cherenfant                         E. L. Clark                             Collection Srvs of Athens, Inc
631 Rangeley Meadows Court              Clark & Washington, LLC                 Po Box 8048
Hampton, GA 30228-6176                  Bldg. 3                                 Athens, GA 30603-8048
                                        3300 Northeast Expwy.
                                        Atlanta, GA 30341-3932


Convergent Outsoucing, Inc              DITECH FINANCIAL LLC                    Ditech Financial LLC
Po Box 9004                             14841 Dallas Parkway, Suite 300         PO Box 6154
Renton, WA 98057-9004                   Dallas, TX 75254-7883                   Rapid City, SD 57709-6154



(c)DITECH FINANCIAL LLC                 Ditech Financial Llc                    ERC/Enhanced Recovery Corp
332 MINNESOTA ST STE E610               345 St Peter St                         8014 Bayberry Rd
SAINT PAUL MN  55101-1311               Saint Paul, MN 55102-1211               Jacksonville, FL 32256-7412



(p)GEORGIA DEPARTMENT OF REVENUE        Hampton Estates                         Hampton Estates HOA Inc.
COMPLIANCE DIVISION                     PO BOX 143089                           Suite 904 and 905
ARCS BANKRUPTCY                         Fayetteville, GA 30214-6526             101 Devant St.
1800 CENTURY BLVD NE SUITE 9100                                                 Fayetteville GA 30214-2710
ATLANTA GA 30345-3202


IRS                                     LVNV Funding                            Midland Funding
401 W. Peachtree St., NW                Po Box 10497                            2365 Northside Dr
Stop #334-D                             Greenville, SC 29603-0497               Suite 300
Room 400                                                                        San Diego, CA 92108-2709
Atlanta, GA 30308


(p)PORTFOLIO RECOVERY ASSOCIATES LLC    Quantum3 Group LLC as agent for         Real Time Resolutions, Inc.
PO BOX 41067                            CP Medical LLC                          1349 Empire Central Drive, Suite #150
NORFOLK VA 23541-1067                   PO Box 788                              Dallas, TX 75247-4029
                                        Kirkland, WA  98083-0788



Real Time Resolutions, Inc.             (p)SPRINGLEAF FINANCIAL SERVICES        Lucretia Lashawn Scruggs
1349 Empire Central Drive, Suite #150   P O BOX 3251                            Shapiro Pendergast & Hasty
Dallas, Texas 75247-4029                EVANSVILLE IN 47731-3251                211 Perimeter Center Parkway, Suite 300
                                                                                Atlanta, GA 30346-1305


(p)STELLAR RECOVERY INC                 (p)TMX FINANCE LLC FORMERLY TITLEMAX    Transworld Systems Inc
PO BOX 48370                            15 BULL STREET                          2235 Mercury Way Ste 275
JACKSONVILLE FL 32247-8370              SUITE 200                               Santa Rosa, CA 95407-5463
                                        SAVANNAH GA 31401-2686
```

```
U. S. Attorney                      Nancy J. Whaley                          Nancy J. Whaley
600 Richard B. Russell Bldg.        Nancy J. Whaley                          Nancy J. Whaley, Standing Ch. 13 Trustee
75 Ted Turner Drive, SW             Standing Chapter 13 Trustee              303 Peachtree Center Avenue
Atlanta GA 30303-3315               303 Peachtree Center Avenue              Suite 120, Suntrust Garden Plaza
                                    Suite 120, Suntrust Garden Plaza         Atlanta, GA 30303-1216
                                    Atlanta, GA 30303-1286
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Georgia Department of Revenue        Portfolio Recovery                     SPRINGLEAF FINANCIAL SERVICES, INC.
Accounts Receivable Collection Section   Attn: Bankruptcy                   P.O. BOX 3251
1800 Century Blvd. NE                Po Box 41067                           EVANSVILLE, IN 47731
Suite 9100                           Norfolk, VA 23541
Atlanta, GA 30345


(d)Springleaf Finance, Inc           (d)Springleaf Financial S              Stellar Recovery Inc
601 Nw 2nd St                        601 Nw 2nd St                          1327 Hwy 2 W
Evansville, IN 47708                 Evansville, IN 47708                   Suite 100
                                                                            Kalispell, MT 59901


Title Max                            (d)TitleMax of Georgia, Inc. d/b/a TitleMax
15 Bull Street                       15 Bull Street, Suite 200
Suite 200                            Savannah, GA 31401
Savannah, GA 31401
```

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

```
Ditech Financial Llc
332 Minnesota St Ste 610
Saint Paul, MN 55101
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Carl Studd                        (d)DITECH FINANCIAL LLC,               (u)Ditech Financial LLC
                                     14841 Dallas Parkway Suite 300
                                     Dallas, Tx 75254-7883
```

End of Label Matrix
Mailable recipients    32
Bypassed recipients     3
Total                  35